UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-187-GWU

KATHY STEPHENSON,                                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                     DEFENDANT.

**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the court on cross-motions

for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled.  If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities?  If yes, proceed to

08-187  Kathy Stephenson

Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

08-187  Kathy Stephenson

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

08-187  Kathy Stephenson

First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

08-187  Kathy Stephenson

to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  <u>E.g.</u>, <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

08-187  Kathy Stephenson

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.

6

08-187  Kathy Stephenson

In such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The plaintiff, Kathy Stephenson, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of being status post hernia repair, status post gastric bypass, hypertension, mild vascular disease, and depression. (Tr. 19).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Stephenson retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 23-7).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff, a 41-year-old woman with a high school education and work experience as a nursing assistant, could perform any jobs if she were limited to sedentary level exertion with: (1) a need to alternate sitting and standing every 45 minutes; (2) an inability to twist or climb ladders, ropes, scaffolds, ramps, or stairs; (3) an inability to work around

7

children; and (4) had a "severely limited but not precluded" ability to deal with work stresses.  (Tr. 446-7).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 448).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.   Because the evidence does not support the psychological limitations, a remand will be required for further consideration.

Mrs. Stephenson alleged disability beginning June 1, 2002 due to heart problems, hernias, and depression.  (Tr. 82).  She described having numerous incisional hernias and scar tissue as a result of gastric bypass surgery in 2003.  (Tr. 437).  The surgery had been a success, but she had so much abdominal pain from scar tissue she was unable to exercise and was gaining weight back.  (Tr. 438).  It even gave her difficulty sitting for long periods of time.  (Tr. 441).  She testified to the existence of valvular heart damage possibly related to the use of the diet drug Fen-Phen, but had no surgery for the problem.  (Tr. 436).  Psychologically, Mrs. Stephenson testified to a history of physical and sexual abuse by a relative as a child, which gave her difficulty working around both male patients and children.  (Tr. 440-3).

08-187  Kathy Stephenson

As an initial matter, the court finds no error in the ALJ's physical restrictions, which are more limiting than found by state agency physicians who reviewed at least a portion of the record.  (Tr. 296-302, 340-6).  The plaintiff was given a fairly extensive cardiac work-up and was advised that she had no limitations on activity. (Tr. 155-6).  The plaintiff's treating family physician, Dr. Sherrell Roberts, opined that she would be limited to lifting 50 pounds occasionally and nothing frequently, walking and standing two hours each in an eight-hour day and sitting four hours, with the need to alternate sitting or standing at will, and also opined that his patient would likely miss more than six days of work a month "if doing more labor" such as lifting, pushing, and pulling.  (Tr. 368-9).  He included several diagnoses, but appeared to relate the limitations primarily to abdominal pain.  The ALJ rejected the restrictions as being inconsistent with Dr. Roberts's office notes as well as the other evidence.  Although the plaintiff suggests that the ALJ's rationale is insufficient, there are very few objective findings in the physician's office notes, and it is somewhat difficult to envision how a person who was so limited in her walking, standing, and sitting due to abdominal pain would still be able to lift up to 50 pounds.  Moreover, evidence from Dr. Mark Pack, the surgeon who performed the plaintiff's gastric bypass and treated her subsequently for hernia repair, does not contain any clear indication of a reason for extensive physical limitations.  For example, a CT scan of the abdomen in April, 2006, showed post surgical changes

9

with no acute processes.  (Tr. 241).  Under the circumstances of this case, there were sufficient grounds to reject the treating physician's opinion, and the ALJ's explanation of his thought processes was adequate.[1]

Turning to the psychological allegations, all of the opinions regarding the plaintiff's mental restrictions are more limiting than found by the ALJ.

The plaintiff's treating psychiatrist, Dr. Robina Bokhari, submitted office notes beginning December, 2006 and consistently diagnosed chronic post traumatic stress disorder (PTSD) with a Global Assessment of Functioning (GAF) score of 50. (Tr. 350-2, 362-3).  A GAF score in this range reflects serious symptoms or any serious impairment in social , occupational, or school functioning.  Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34.  Several different medications were prescribed.  On April 24, 2007, after several months of treatment, Dr. Bokhari prepared a mental residual functional capacity assessment stating that Mrs. Stephenson had a "marked" limitation in areas such as her ability

---

[1] The plaintiff asserts that the ALJ failed to consider the plaintiff's obesity, but this condition was not included as one of Dr. Roberts's diagnoses.  Social Security Ruling (SSR) 02-01p states that the Commissioner "may" ask a medical source to clarify whether an individual has obesity in cases where there is not a diagnosis but medical records show a consistently high body weight; however, it provides that in most cases "we will use our judgment to establish the presence of obesity based on the medical findings."  SSR 02-01p, p. 3.  In the present case, the plaintiff's weight went down dramatically after her gastric bypass surgery, by her own admission, and while she testified that she was gaining weight again, there is no evidence of a consistently high weight.

08-187  Kathy Stephenson

to follow work rules, to interact appropriately with supervisors and coworkers, to accept instructions and respond appropriately to criticism from supervisors, to deal with the public, to use judgment, to maintain attention and concentration, to behave in an emotionally stable manner, to demonstrate reliability, to complete a normal work day and work week without interruptions from psychologically-based symptoms, and to tolerate the ordinary stresses associated with daily work activities. (Tr. 364-5).  Dr. Bokhari cited a long history of emotional issues dating from childhood, which continued to worsen over time.  (Tr. 366).  Her symptoms were currently "in control but [her] level of functioning is still limited."  (Id.).  These limitations were more severe than found by the ALJ.

Previously, the plaintiff underwent a consultative psychological evaluation by Dr. Greg V. Lynch on February 24, 2006.  (Tr. 196).  Mrs. Stephenson reported her childhood experiences, and stated that she had been depressed despite being on anti-depressant medication for six months.  (Tr. 197).  Dr. Lynch noted that her posture and gait were tense, that she was distractible and anxiety appeared to interfere with her ability to concentrate, her insight was inconsistent, and her decision-making appeared to vacillate.  (Tr. 198).  His impression was chronic major depressive disorder which was moderate to severe, and chronic PTSD.  (Tr. 199). Like Dr. Bokhari, he assigned a GAF of 50.  In terms of specific functional restrictions, Dr. Lynch cited a "marked" limitation in Mrs. Stephenson's ability to

11

tolerate the stress and pressure of day-to-day employment and "moderate" limitations in her ability to sustain attention and concentration towards the performance of simple, repetitive tasks and respond appropriately to supervision, coworkers, and work pressures in a work setting.  (Id.).

State agency psychologists Jane Brake and Stephen Scher reviewed the evidence prior to the submission of Dr. Bokhari's reports.  They felt that Dr. Lynch's opinion should be given great weight except for his opinion regarding stress tolerance, which was not supported by the preponderance of medical evidence alone and appeared to incorporate physical restrictions.  (Tr. 305, 337).  They concluded that Mrs. Stephenson would have a moderately limited ability to maintain attention and concentration for extended periods, work in coordination with others without being distracted by them, interact appropriately with the general public, and respond appropriately to changes in the work setting.  (Tr. 303-4, 335-6).

The ALJ found the plaintiff's mental complaints to be only partially credible, citing such factors as her ability to graduate from high school, her lack of mental health treatment, and the lack of regular complaints of psychological symptoms "throughout her pursuit of medical care."  (Tr. 25).  Dr. Bokhari's limitations were rejected because the ALJ felt they were not supported by the psychiatrist's office notes, because of the plaintiff's reported improvement, and because of Dr. Bokhari's statements that her symptoms were controlled.  (Id.).  The ALJ stated that his

08-187  Kathy Stephenson

functional capacity was "consistent with Dr. Lynch and the [state] agency mental health consultants."  (Id.).

The plaintiff argues that the ALJ erred in rejecting Dr. Bokhari's opinion. Although Dr. Bokhari was a treating source whose opinion is normally entitled to great deference, her office notes are somewhat non-specific other than in reporting the plaintiff's subjective complaints.  Dr. Bokhari did report a tearful affect and anxiety, but seemed to indicate that the plaintiff was also normal in mood, speech, memory, attention and concentration, and insight.  (E.g., Tr. 351).  Under the circumstances, the court agrees that the ALJ could reasonably have determined that Dr. Bokhari's findings were not entitled to controlling weight.

As the plaintiff notes, however, the ALJ's hypothetical question did not reflect the fact that Dr. Lynch assigned moderate limitations in the plaintiff's ability to sustain attention and concentration towards the performance of even simple, repetitive tasks and to respond appropriately to supervision, coworkers, and work pressures in a work setting.  Although these factors by themselves might not preclude all work activities, it is not clear what effect they would have in combination with a marked limitation of ability to tolerate stress and pressure and a limitation to sedentary level exertion and with the other non-exertional restrictions found by the ALJ.  The state agency reviewers also found moderate limitations in these areas. Therefore, if the opinion of the treating psychiatrist is to be rejected, the hypothetical

08-187  Kathy Stephenson

question would at least have to include the "moderate" limitations in order to reflect the findings of Dr. Lynch and the state agency reviewers.[2]

The decision will be remanded for further consideration.

This the 8th day of April, 2009.

**Signed By:**

**_G. Wix Unthank_**

**United States Senior Judge**

_____

[2]The plaintiff also asserts that there is a distinction between a "marked" limitation and the "seriously limited but not precluded" limitation found by the ALJ.  This is a matter that can be clarified on remand if the plaintiff wishes to pursue it.

14